UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-25766-RAR

ALBION BRAND FOUNDRY LTD,

                *Plaintiff*,

v.

The Partnerships, Unincorporated Associations Identified on Schedule A,

                *Defendants*.
_____/

**PLAINTIFF'S MOTION FOR ENTRY OF PRELIMINARY
INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

ALBION BRAND FOUNDRY LTD ("Plaintiff"), hereby moves the Court to convert the Temporary Restraining Order [ECF No. 16] issued in this matter into a preliminary injunction against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A hereto ("Defendants") pursuant to 15 U.S.C. § 1116, Fed. R. Civ. P. 65, The All Writs Act, 28 U.S.C. § 1651(a), and this Court's inherent authority. Plaintiff further requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2). In support thereof, Plaintiff submits the following memorandum of law.

**Introduction**

Plaintiff filed the instant civil action to combat the willful and intentional counterfeiting and infringement of its federally registered GASTROPOD trademark under U.S. Trademark Registration No. 6,593,294. *See* [ECF No. 9-1].

The same findings that led the Court to enter the Temporary Restraining Order ("TRO") [ECF No. 16], on February 9, 2026, warrant the entry of a preliminary injunction that continues to prohibit Defendants' further use of Plaintiff's trademark pending a final determination on the merits.

The Court entered the TRO against Defendants based upon Plaintiff's evidence showing that each Defendant is knowingly and intentionally promoting, advertising, distributing, offering for sale, and selling goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiff's registered trademark within this district and throughout the United States by operating Internet based e-commerce stores under the seller names identified on Schedule A hereto (the "E-commerce Store Names" or "Seller Aliases"). Specifically, Plaintiff has provided evidence clearly demonstrating that each Defendant: (a) is engaged in the advertising, offering for sale, and sale of counterfeit and infringing versions of Plaintiff's goods; and (b) accomplish its sales of counterfeit goods via the Internet using, at least, e-commerce stores operating under the E-commerce Store Names. Based on this evidence, Plaintiff's Complaint alleges claims for trademark counterfeiting and infringement, and false designation of origin.

Each Defendant's infringing conduct has caused significant harm to Plaintiff's economic interests, reputation, and the commercial value of its trademark. To continue to preserve the disgorgement remedy and all other equitable remedies available, Plaintiff requests that the Court

convert the TRO to a preliminary injunction that continues to prohibit Defendants' use of "GASTROPOD" mark and the restraint of Defendants' assets.

## Statement of Facts

### A. Plaintiff's Trademark Rights

Plaintiff is the owner of all rights, title and interest in the GASTROPOD mark, U.S. Trademark Registration No. 6,593,294. *See* [ECF No. 9-1]. The registration is valid, subsisting, unrevoked, unchallenged and uncancelled. The trademark is classified under International Class 18, covering a broad range of rucksacks, sports bags, briefcases, purses, shoulder straps, pocket wallets, laptop bags and related products. *Id.*

The GASTROPOD mark is well recognized when associated with various assorted bags and carrying accessories. *See* Decl. of Zhang, [ECF No. 9-3, ¶6]. Genuine products bearing the GASTROPOD mark are distributed through authorized e-commerce merchants over third-party e-commerce platforms, such as Walmart.com. *Id*.

The registration for the GASTROPOD mark constitutes *prima facie* evidence of validity and of Plaintiff's exclusive right to use the GASTROPOD mark in connection with the goods identified therein and other commercial goods. *See* Decl. of Zhang, [ECF No. 9-3, ¶4]. The registration also provides constructive notice to all Defendants of the ownership and exclusive rights of the GASTROPOD mark. *Id.*

### B. Defendants' Wrongfully Use Plaintiff's Trademark

The success of GASTROPOD has unfortunately attracted significant counterfeiting and/or infringing activities. *See* Decl. of Zhang, [ECF No. 9-3, ¶7]. Defendants do not have, nor have they ever had, the right or authority to use the GASTROPOD mark for any purpose. However,

despite their known lack of authority to do so, Defendants are concurrently promoting and otherwise advertising, distributing, offering for sale, and/or selling, through their respective e-commerce online stores, goods using the trademarks that are exact copies of the GASTROPOD mark, without authorization. *Id*. ¶10. Unauthorized individuals and entities have exploited the GASTROPOD trademark, and the goodwill established by the GASTROPOD brand within the industry, selling low-quality imitation counterfeits of GASTROPOD products. *Id.* ¶7.

Upon a closer examination of Defendants' product listings, it was revealed that none of Defendants disclosed any information suggesting they were engaged in reselling GASTROPOD products. Defendants' activities amount to nothing more than unlawful operations, infringing on Plaintiff's trademark rights. *Id.* ¶¶8-12. Defendants' e-commerce stores and associated payment accounts are a substantial part of how Defendants further their scheme. Additionally, it was apparent from customer complaints that customers were under the impression they had purchased genuine GASTROPOD products from Defendants' online stores. *Id.* ¶12.

Plaintiff's well-pleaded allegations regarding the registration patterns of Defendants' online stores, offering and selling various infringing various assorted bags and carrying accessories, similarities among their operations under their Seller Aliases, and common tactics employed to evade enforcement efforts establish a logical connection among Defendants and that Defendants are likely interrelated.

**Procedural Background**

On December 10, 2025, Plaintiff filed its Complaint, [ECF No. 1], against Defendants for trademark counterfeiting and infringement and false designation of origin. On December 12, 2025, Plaintiff filed its *Ex Parte* Application for Entry of Temporary Restraining Order and Order Restraining Transfer of Assets, [ECF No. 9]. On February 9, 2026, this Court issued the Temporary

Restraining Order. [ECF No. 16]. Pursuant to the TRO Order, Plaintiff posted its required bond on February 12, 2026.

Pursuant to the Order on Plaintiff's Motion for Alternate Service [ECF No. 14], Plaintiff emailed Defendants, using the addresses provided by the third-party platform, the Complaint, the TRO Motion, the sealed TRO Order, and the Summons, and the link to all relevant documents: https://cloud.palmerlawgroup.com/index.php/s/WJDfrPeCM6orMJU. *See* [ECF No. 20].

Plaintiff now moves the Court to convert the Temporary Restraining Order into a preliminary injunction against Defendants and requests a hearing on the requested injunctive relief pursuant to Local Rule 7.1(b)(2).

## Argument

**A. A Preliminary Injunction is Essential to Prevent Irreparable Injury.**

Rule 65(a)(1) of the Federal Rules of Civil Procedure provides that a Court may issue a preliminary injunction only on notice to the adverse party. Fed. R. Civ. P. 65(a)(1). Plaintiff has served Defendants with a copy of the TRO, together with all other documents filed in this matter, thereby providing notice to Defendants. *See* [ECF No. 20].

Each Defendant fraudulently promotes, advertises, offers to sell, and sells goods bearing counterfeits and infringements of the GASTROPOD mark via their e-commerce stores using the E-commerce Store Names. By its actions, each Defendant is creating a false association in the minds of consumers between itself and Plaintiff. Specifically, Defendants are wrongfully using counterfeits and infringements of the GASTROPOD mark to increase consumer traffic to their illegal operations.

Absent a preliminary injunction, Defendants can and, based upon Plaintiff's counsel's experience, will likely significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the e-commerce stores at issue are entirely under Defendants'

control. They can change ownership, modify store data and content, alter payment accounts, redirect consumer traffic to other seller aliases, and transfer assets and ownership rights associated with the Seller Aliases. *See* Decl. of Palmer [ECF No. 9-2, ¶12]. These changes can occur rapidly once Defendants are notified of this action. *Id.*

Thus, each Defendant can easily electronically transfer and secret the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id.* ¶14. As each Defendant engages in unlawful counterfeiting activities, Plaintiff has no reason to believe they will make their assets available for recovery pursuant to an accounting of profits or other equitable remedies or will adhere to the authority of this Court any more than they have adhered to federal trademark law. *Id.* ¶13.

Thus, this Court should prevent an injustice from occurring by converting the TRO into a preliminary injunction that continues to preclude Defendants from displaying their infringing content via the e-commerce stores or modifying or deleting any related content or data to prevent ongoing irreparable harm and maintain the status quo.

### B. The Four Factors That Warranted Entry of a TRO Continue to Favor Entry of a Preliminary Injunction.

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing *Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)). To obtain a preliminary injunction, a party must establish "(1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered if the relief is not granted; (3) the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) entry of the relief would serve the public interest." *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005);

*see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).

Plaintiff's evidence establishes all of the relevant factors.

1. <u>Plaintiff Is Likely Succeed on the Merits of the Trademark Infringement Claims</u>

To establish trademark infringement, a plaintiff needs to prove: "(1) that its valid mark was used in commerce by the defendant without consent, and (2) that the unauthorized use was likely to cause confusion, to cause mistake, or to deceive." *Dieter v. B & H Indus. of S.W. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). Similarly, a false designation of origin claim requires (1) that the plaintiff has enforceable trademark rights in the mark or name, and (2) that the defendant made unauthorized use of it such that consumers were likely to confuse the two. *Custom Mfg. & Eng'r., Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007).

a) *Validity, ownership, and Defendant's unauthorized use*

Here, Plaintiff has established both the validity and its ownership of the trademark in question. *See* [ECF No. 9-1]; *see also* [ECF No. 9-3, ¶4]. Plaintiff's GASTROPOD mark, under U.S. Trademark Registration No. 6,593,294 is valid, subsisting, unrevoked and unchallenged. The registration for the GASTROPOD mark creates a *prima facie* presumption of validity of a trademark. 15 U.S. § 1114(1). *See also Jordan Intern., Inc. v. United Industries Sales Organization, Inc.*, 699 F. Supp. 268 (S.D.Fla. Feb. 22, 1988). Further, Defendants' unauthorized use of the GASTROPOD mark on competing goods is documented in the infringing evidence. *See* Decl. of Zhang, [ECF No. 9-3, ¶¶7-12]. Plaintiff has never licensed, assigned, or otherwise consented to that use. *See Id*. ¶13.

Therefore, Plaintiff's valid trademark registration and Defendants' unauthorized use satisfies this prong of the test for trademark infringement.

b) *Likelihood of confusion*

The Eleventh Circuit uses a seven-factor test in determining the likelihood of confusion. *See Ross Bicycles, Inc. v. Cycles USA, Inc.*, 765 F.2d 1502, 1506 (11th Cir. 1985). These factors are: (1) the strength of the mark; (2) the similarity of marks; (3) the similarity of the goods; (4) similarity of the sales methods; (5) the similarity of advertising media; (6) defendant's intent; and (7) evidence of actual confusion. See 675 F.2d 1160, 1164 (11th Cir. 1982). *Id*.; *see also Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1303 (11th Cir. 1997). The seven factors listed are to be weighed and balanced and no single factor is dispositive. *Id*.

In addition, Plaintiff has demonstrated that Defendants unauthorized use of the GASTROPOD mark likely caused confusion to the consumers and created a false association to the GASTROPOD brand.

The GASTROPOD mark is inherently distinctive and sits on the strongest end of the trademark spectrum. *See* Decl. of Zhang, [ECF No. 9-3, ¶3]. By using the identical mark on their infringing products and advertising on the same e-commerce platforms, where authorized sellers promote and sell genuine GASTROPOD products, the likelihood of confusion is apparent. *Id*. ¶¶9-15, 22. Defendants' actions, including unfair competition and selling at lower prices, suggest an intent to deceive consumers.

Individually and collectively, these facts demonstrate that Defendants are willfully and deliberately infringing on Plaintiff's GASTROPOD mark. *See Millennium Funding, Inc. v. 1701 Mgmt*., 21-cv-20862-BLOOM/Otazo-Reyes, at *14 (S.D. Fla. Mar. 25, 2022) ("Where a party produces counterfeit goods, there is a presumption of likelihood of confusion."). Further, courts have found that evidence of constructive knowledge or evidence of willful blindness is sufficient to establish specific acts of direct infringement. *See Luxottica Group, S.p.A. v. Airport Mini Mall,*

*LLC*, 932 F.3d 1303, 1314-1315 (11th Cir. Aug. 7, 2019); *see also Frehling Enterprises, Inc. v. International Select Group, Inc.*, 192 F.3d 1330, 1339 (Oct. 19, 1999) ("The parties' outlets and customer bases need not be identical, but some degree of overlap should be present."). Courts have suggested that the stronger the case for willful blindness, the stronger the case for consumer confusion. Indeed, this Circuit has held that, "[d]issimilarities between the retail outlets for and the predominant customers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980), cert. denied 449 U.S. 899 (1980).

In conclusion, Plaintiff has established that it is more likely to succeed on the merits of the trademark infringement claims.

2. <u>There is No Adequate Remedy at Law, Plaintiff is Suffering and will Continue to Suffer Irreparable Harm in the Absence of Preliminary Relief</u>

Once Plaintiff establishes a likelihood of success on the merits, there is a presumption, established through case law and a recent amendment to the Lanham Act, that Plaintiff will suffer irreparable harm in the absence of preliminary relief. *See* 15 U.S.C. § 1116(a); *see also Hill v. Dinges*, 3:21-CV-165-MMH-PDB, at *11 n.5 (M.D. Fla. Sep. 13, 2021) (applying presumption); *Tiramisu Intern, LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279 (S.D. Fla. Aug. 11, 2010). Without equitable relief in the form of an injunction and asset freeze, Plaintiff is unable to be assured the availability of permanent relief later. *Levi Strauss Co. v. Sunrise Intern. Trading*, 51 F.3d 982 (11th Cir. 1995) (citing *Federal Trade Commission v. United States Oil and Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)). Notably, trademark actions "are common venues for the issuance of preliminary injunctions." *Foxworthy v. Custom Tees, Inc.*, 879 F.Supp. 1200, 1219 (N.D.Ga. 1995) (internal citation omitted). Courts have found irreparable harm to be satisfied

where the infringers' unauthorized use of Plaintiff's intellectual property causes confusion among consumers and damages business reputation and brand confidence. *Id*.

Here, consumer confusion is evident as consumers would not be able to identify a genuine GASTROPOD product from the counterfeit products advertised and sold by Defendants. *See* Decl. of Zhang, [ECF No. 9-3, ¶¶9-15]. Further, Plaintiff has effectively demonstrated that it has incurred lost sales directly attributable to Defendants' willful infringement, and there is a compelling indication of potential future sales losses, supporting a finding of irreparable harm. *Id*. ¶¶19-26.

In addition, given that Defendants conceal their true identities and operate from outside the United States, it is unlikely that Plaintiff can recover monetary damages award they might obtain. *Id*. at ¶¶ 15, 19, 24; *see also* Decl. of Palmer, [ECF No. 9-2, ¶¶11-14]. Further, foreign online perpetrators such as Defendants are likely to cause irreparable harm by avoiding judgments rendered in United States courts. *Id*.; *see also* Decl. of Palmer, [ECF No. 9-2, ¶14]; *Foodcomm Int'l v. Barry*, 328 F.3d 300, 305 n.2 (7th Cir. 2003) (holding that the plaintiffs established a likelihood of irreparable injury with no adequate remedy at law where the defendants were Australian citizens with "no significant assets in the United States").

Thus, without injunctive relief, Plaintiff is suffering and will continue to suffer irreparable harm, including financial loss and reputational damage, which cannot be adequately remedied.

3. <u>The Balance of Hardship Tips Sharply in Plaintiff's Favor, and The Public Interest Will be Served with Entry of the Sought Injunctive Relief</u>

"When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc*., 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks

omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n.*, 929 F. Supp. 473, 478 (D.D.C. 1996).

Courts in this district have held that the likelihood of confusion should be considered in evaluating the balance of harm to Plaintiff. *YETI Coolers, LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule A*, 566 F.Supp.3d 1333 (S.D. Fla. Oct. 14, 2021). Similarly, the public interest would be served by an injunction. Trademark infringement "encroaches on the right of the public to be free of confusion as well as the synonymous right of the trademark owner to control his products' reputation." *TracFone Wireless, Inc. v. Hernandez*, 196 F.Supp.3d 1289 (S.D.Fla. July 21, 2016).

Therefore, the public interest favors issuance of the temporary restraining order in order to protect Plaintiff's respective trademark interests and protect the public from being defrauded by the palming off of counterfeit goods as Plaintiffs' genuine goods. *Id.; see also Acushnet Company v. 72golfshop.com*, Case No.: 14-cv-61184 (S.D.Fla. June 5, 2014); *Chanel, Inc. v. designerchanelgirl.com*, Case No.: 20-cv-62447 (S.D.Fla. Dec. 7, 2020).

Finally, an infringer cannot complain about the loss of ability to offer its infringing product. *Warner Bros. Entm't Inc. v. RDR Books*, 575 F.Supp.2d 513, 553 (S.D.N.Y. 2008) (citing *My–T Fine Corp. v. Samuels*, 69 F.2d 76, 78 (2d Cir. 1934)) (Hand, J.). There can be no harm to Defendants since an injunction will merely require that they comply with the law, namely, the Lanham Act. *See Capitol Records v. Zahn*, Case No. 3:06-0212, 2007 WL 542816 at *4 (M.D. Tenn. Feb. 16, 2007). In contrast, "the wrongful denial of injunction may well encourage others to do what defendants have done, thus increasing the injury to [Plaintiff] and inflicting expense on

11

[Plaintiff] to defend [its] intellectual property interests." *Ty, Inc. v. Publications Intern., Ltd.*, 81 F.Supp.2d 899, 903 (N.D.Ill., 2000).

In the instant case, the evidence establishes that Defendants intentionally promoted, advertised, and offered for sale their infringing products for the purpose of financial gain. Given that an injunction is sought to halt Defendants' unlawful profit-making activities, the balance of equities unquestionably tips in Plaintiff's favor.

Further, an injunction against defendants also serves the public interest by upholding trademark integrity, protecting consumers, and maintaining fair competition.

Finally, an injunction would enhance the Court's authority in delivering effective relief. Plaintiffs have valid concerns over potential recovery because, without an injunction, Defendants will unlikely make their assets available for recovery or adhere to the authority of this Court.

## The Equitable Relief Sought by Plaintiff is Appropriate

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a).

### A. The Preliminary Injunction Should Continue to Enjoin Defendants' Unauthorized and Unlawful Use of Plaintiff's Trademarks.

Plaintiff requests the Court to convert the TRO to a preliminary injunction that continues to require Defendants to cease all use of the GASTROPOD mark in connection with the e-commerce stores they own and operate, or control. Such relief is necessary to continue to stop the ongoing harm to Plaintiff's trademark and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their unlawful operations created by their unlawful use of the GASTROPOD mark. Many courts, including this Court, have authorized injunctive relief in similar cases involving the unauthorized use of trademarks.

### B. The Preliminary Injunction Should Continue the Restraint of Defendants' Assets

In addition to converting the Temporary Restraining Order to a preliminary injunction that continues to enjoin Defendants' unlawful practices, the Court's preliminary injunction should continue to limit the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. Under 15 U.S.C. § 1117, Plaintiff will be entitled to an accounting and payment of the profits earned by each of Defendants throughout the course of their counterfeiting scheme. 15 U.S.C. § 1117(a).

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant injunctive relief to prevent a defendant from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite. See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

Considering the illicit nature of the counterfeiting business and the ability of counterfeiters to eliminate their evidentiary trails by conducting their business over the Internet, courts in the Eleventh Circuit have particularly noted the significance of such asset restraints in cases involving counterfeiting defendants. *See, e.g., Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *see also Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

Using the power to issue provisional remedies ancillary to their authority to provide final equitable relief, numerous courts have granted orders restraining defendants from transferring their assets under trademark infringement claims. *See, e.g., Levi Strauss*, 51 F.3d at 987; *Reebok Int'l*

13

*Ltd.*, 970 F.2d at 559. In this case, each Defendant's blatant violations of federal trademark laws warrant a preliminary injunction continuing the restraint of its respective assets.

### C. The Posted Bond is Sufficient to Secure the Injunction.

Under Rule 65(c) of the Federal Rules of Civil Procedure, the Court has discretion to determine the appropriate bond amount. Plaintiff respectfully requests that the previously posted bond of $10,000 remain in place to secure the injunction.

This bond is reasonable considering the unequivocal nature of Defendants' infringing activities. The bond is sufficient to cover any damages Defendants may incur if the injunction is later found to be wrongful, while ensuring the integrity of the judicial process.

### D. Request for Hearing and Extension of the TRO.

In accordance with Local Rule 7.1(b)(2) and pursuant to Federal Rule of Civil Procedure 65(b)(3), Plaintiff respectfully requests the Court schedule a hearing on the instant Motion to allow Defendants to challenge the appropriateness of the current TRO, or to oppose this Motion.

Additionally, Plaintiff respectfully requests that the Court extend the current Temporary Restraining Order ("TRO"), which is set to expire on February 23, 2026, for an additional seven days. This extension is necessary to preserve the status quo and prevent Defendants from continuing their infringing activities and potentially transferring or concealing assets before the Court can conduct a hearing on the Preliminary Injunction. Given the Defendants' control over their e-commerce stores, the potential for altering store data, transferring assets, or moving financial accounts, a brief extension will ensure that Defendants cannot evade the TRO's provisions.

This request for an extension is made in good faith and is not for the purpose of delay, but to ensure that Plaintiff's rights are adequately protected while the Court considers the Motion for Preliminary Injunction. The extension will allow the Court sufficient time to review and address

the Plaintiff's request for a preliminary injunction, thereby preventing further harm to Plaintiff's trademark and business interests.

## Conclusion

Defendants' actions have caused irreparable harm to Plaintiff's trademark rights and business. Plaintiff has demonstrated a likelihood of success on the merits and the need for immediate injunctive relief to prevent further irreparable harm. The requested preliminary injunction is in the public interest, and the bond posted adequately secures the injunction.

Therefore, Plaintiff respectfully requests that the Court convert the Temporary Restraining Order into a Preliminary Injunction and maintain the posted bond.

DATED: February 23, 2026.                     Respectfully submitted,

                                              /s/ Andrew Palmer
                                              Andrew J. Palmer
                                              Palmer Law Group, P.A.
                                              110 East Broward Blvd, Suite 1700
                                              Fort Lauderdale, FL 33301
                                              Phone: 954-771-7050
                                              ajpalmer@palmerlawgroup.com
                                              ***Attorney for Plaintiff***

**Schedule A Defendants**

| Def. # | Seller Aliases | Defendants' Walmart Store URLs |
|---|---|---|
| 1 | JieW-Enterprise | https://www.walmart.com/global/seller/102827638 |
| 2 | New fashion | https://www.walmart.com/global/seller/102791403 |
| 3 | Smooth Crisp | https://www.walmart.com/global/seller/102906657 |
| 4 | US NEW shop | https://www.walmart.com/global/seller/102721659 |
| 5 | XIEZEREN | https://www.walmart.com/global/seller/102916738 |
| 6 | Yifeus | https://www.walmart.com/global/seller/102824980 |
| 7 | HELLOHA | https://www.walmart.com/global/seller/102888930 |
| 8 | GRONG TRADING | https://www.walmart.com/global/seller/102919986 |
| 9 | GOODYEA | https://www.walmart.com/global/seller/102909810 |
| 10 | QinSiLiStore | https://www.walmart.com/global/seller/102765434 |
| 11 | NIANIA Stores | https://www.walmart.com/global/seller/102877883 |
| 12 | Mf stores | https://www.walmart.com/global/seller/101630610 |
| 13 | CHENHAINAN | https://www.walmart.com/global/seller/101654994 |
| 14 | wenshuwangluo | https://www.walmart.com/global/seller/102873711 |
| 15 | Soon good | https://www.walmart.com/global/seller/102902800 |
| 16 | Signature Inner | https://www.walmart.com/global/seller/102898693 |
| 17 | Momarys | https://www.walmart.com/global/seller/102796881 |
| 18 | congruiyuan bags | https://www.walmart.com/global/seller/101295436 |
| 19 | Blue Lake outdoor | https://www.walmart.com/global/seller/102845598 |
| 20 | chongkeji co.ltd | https://www.walmart.com/global/seller/102894340 |
| 21 | Cutee Store | https://www.walmart.com/global/seller/102790844 |
| 22 | Florida Maniacs Club | https://www.walmart.com/global/seller/102517860 |
| 23 | FreshMart | https://www.walmart.com/global/seller/102906860 |
| 24 | hongdongdonglin trading | https://www.walmart.com/global/seller/102916215 |
| 25 | Huayi LLC | https://www.walmart.com/global/seller/101681981 |
| 26 | jizhanguo | https://www.walmart.com/global/seller/102779175 |
| 27 | LINGOPQSTORE | https://www.walmart.com/global/seller/102833298 |
| 28 | NINGLIN LLC | https://www.walmart.com/global/seller/102817980 |
| 29 | ronghaokai | https://www.walmart.com/global/seller/102773167 |
| 30 | TanChenYi | https://www.walmart.com/global/seller/102750213 |
| 31 | WEAREGOOD | https://www.walmart.com/global/seller/102892638 |
| 32 | Winkdy Co.Ltd | https://www.walmart.com/global/seller/102501024 |
| 33 | XIAO XIAO HUI | https://www.walmart.com/global/seller/102701064 |
| 34 | XIAOLONG TRADING | https://www.walmart.com/global/seller/102816523 |
| 35 | XuanYuBaiHuo | https://www.walmart.com/global/seller/102897207 |
| 36 | zhouyuchang llc | https://www.walmart.com/global/seller/102877057 |
| 37 | Cherish Cheer | https://www.walmart.com/global/seller/102867701 |
| 38 | Lullaby nice | https://www.walmart.com/global/seller/101669063 |